Leslie Allen WRIGHT, Plaintiff,

v.

JEEP CORPORATION, et al., Defendants,

Richard G. Snyder, Non-Party Respondent.

Civ. A. No. 82–001.

United States District Court, E. D. Michigan, S. D.

Sept. 30, 1982.

Peter A. Davis, Davis & Fajen, Ann Arbor, Mich., for plaintiff.

James W. Goss, Bloomfield Hills, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case deals for the first time with the conflict between the need for evidence in the administration of justice and the desire of a researcher not connected with the litigants to avoid being imposed upon at the whim of litigants. It deals with a person who has become a public figure as a result of a research project yet wants to remain essentially anonymous so far as the administration of justice is concerned. Finally, it deals with an effort by this court to provide information essential to the fair determination of litigation and to protect researchers who have that information and who might otherwise be burdened.

All of this comes before the court on appeal from the United States Magistrate's order to quash a subpoena duces tecum to a non-party expert.

FACTS

Dr. Richard Snyder, the non-party respondent, is a professor and research scien-

tist at the Highway Safety Institute of the University of Michigan. He is the principal author of the 1980, 152 page report, "On-Road Crash Experience of Utility Vehicles", published by the Institute. The report was the result of a research project and study by the Highway Safety Institute for the Insurance Institute for Highway Safety. The study concludes that utility vehicles, particularly the Jeep CJ–5, experience a disproportionately high roll over rate in accidents.

Jeep Corporation, a defendant in the above personal injury action, seeks to subpoena

[a]ny and all research data, memoranda, drafts, correspondence, lab notes, reports, calculations, moving pictures, photographs, slides, statements and the like pertaining to the on-road crash experience of utility vehicles study by the Highway Safety Research Institute of the University of Michigan for the Insurance Institute for Highway Safety in which [Prof. Snyder] participated.

It is Jeep's position that the study is likely to be used by the plaintiff in the action and that the material requested in the subpoena is necessary to judge the validity of the conclusions reported and for the defense in that action.

Professor Snyder objects to the subpoena on the following grounds:

1. He is not a party to the lawsuit, he has no first-hand knowledge of the accident in question, and he has not been retained as an expert by either party.

2. He has an absolute right not to be compelled to testify as an unwilling expert.

3. He has a first amendment right as a researcher and writer that protects him from testifying against his will.

4. He has an academic privilege to refuse to testify.

5. Compliance with the subpoena would be extremely burdensome and forced testimony would have a chilling effect on researchers, scientists and educators.

6. The documents sought are privileged and confidential.

7. Fed.R.Civ. 706(a) requires that Prof. Snyder consent before testifying.

8. He was improperly subpoenaed to appear for deposition in Oakland County when he resides in Washtenaw County and he was not properly served.

The magistrate granted the motion to quash the subpoena relying on a decision rendered in favor of Professor Snyder involving the same issues. *Buchanan v. American Motors Corp.*, Misc. No. 81–436 (E.D.Mich. Oct. 23, 1981). The decision in *Buchanan* is currently being appealed to the Court of Appeals for the Sixth Circuit. Because of the importance of the issues involved, this court chose to explore fully the matter in the present action.

DISCUSSION

First of all, to maintain the system of justice used in this country, it is necessary that *all* relevant evidence be made available for the resolution of disputes, unless there are public policy reasons for excluding evidence in specific situations. " '[T]he public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1973) (quoting *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972)). Privileges are designed to protect "weighty and legitimate competing interests." *Id.* For example, the attorney-client privilege exists because of society's greater interest that a client reveal all pertinent information to the attorney handling the case. Full disclosure to the attorney enables the attorney to seek the most appropriate solution to the problem. The interest in the attorney's full knowledge of the facts is so compelling that it weighs against society's "right to every man's evidence" and the attorney-client privilege protects the former to the detriment of the latter. The question before the court is whether there are public policy reasons that would exempt Professor Snyder from providing the material requested in this case.

At the outset it is important to understand the relationship between the conclusions contained in research reports and the underlying data from which these conclusions are drawn. Researchers accumulate basic data from an infinite number of sources. Sometimes it has been acquired by others and is used by the researcher. Sometimes it is acquired specifically for this research project. Sometimes and usually both sources are used. The data are analyzed, compared and contrasted and from it all, the researcher draws conclusions using his analysis to document and support his report which in turn supports his conclusions. The value of the conclusions turns on the quality of the data and the methods used by the researcher in his analysis of that data as well as the skill and perception of the researcher.

So if the conclusions or end product of a research effort is to be fairly tested, the underlying data must be available to others equally skilled and perceptive. Here a researcher does not want to testify about his research and asks the court to prohibit a litigant from acquiring his underlying data.

### Refusal Based on Court Rule

Professor Snyder claims a right to refuse to give or provide evidence on the ground that 1) he is not a retained expert and 2) as an expert, he has the right to refuse to testify. These claims embrace objections 1, 2, and 7 as stated above. Although this problem is presented in context of a discovery subpoena, much of what is said in ruling on this discovery matter is predicated on a consideration of the relevancy of the evidence at trial. The discovery issue is controlled by Fed.R.Civ.P. 26(b)(1): "Parties may obtain discovery regarding any matter, not privileged, which is *relevant to the subject matter involved* in the pending action whether it relates to the claim or defense of the. party seeking discovery...." (emphasis added). There is a high probability that the results of Professor Snyder's research will be used at trial by plaintiff, either through the testimony of other experts or as a result of the application of Fed.R.Evid. 803(18), and it is important for the parties to learn about the underlying facts to help the court judge the validity of the conclusions. The material requested is relevant for the assessment of the validity of the conclusions which were drawn.

■ The respondent points to Fed.R. Civ.P. 26(b)(4) and argues that, since he does not fall within any of the subcategories addressing discovery of experts, he cannot be compelled to testify. Professor Snyder has it all wrong. The administration of justice requires testimony of all persons unless reasons are established to the contrary. Rule 26(b)(4) indicates that in the limited situations there described, expert witnesses are to be treated differently and provides specific procedures for those limited situations. Since Professor Snyder does not fit under Rule 26(b)(4) because the study was not developed in anticipation of litigation and because he has not been retained by either party, this rule has nothing to do with his claim not to be required to testify. The material requested is still relevant and can be compelled under Rule 26(b)(1). Rule 26(b)(4) only attempts to strike some balance between the interests of the parties in discovery of retained experts. It does not apply to this case.

■ Fed.R.Evid. 706(a), which says that the court may not appoint an expert on its own motion unless the expert consents to act, also has no application to the present case. The court is not requesting Professor Snyder to assist in explaining technical matters; a party to the lawsuit is requesting that it have an opportunity to review the data underlying a study that is highly damaging and is likely to be offered in evidence against it. There is nothing in the federal rules that creates an exemption for the respondent from providing the relevant material requested.

### Refusal Based on Privilege

Professor Snyder contends that he has a privilege at common law not to testify as an academic researcher. This claim embraces objections 3 and 6 noted earlier.

The court is unaware of any common law privilege that would apply to this case. Under Fed.R.Evid. 501 the court is instructed to apply the substantive law of the forum with respect to privileges when the questions presented in the action involve state, rather than federal, law. Because the defendant seeks to depose the respondent in Michigan, the appropriate law regarding privilege is the law of Michigan. There is nothing in the law of Michigan that would support any of the privileges that the respondent claims. The only Michigan case cited in support of a privilege not to testify is *Klabunde v. Stanley,* 384 Mich. 276, 181 N.W.2d 918 (1970). In *Klabunde* the court held that the trial court had not abused its discretion in denying the defendant's request to depose an expert retained by the plaintiff when the request was made too late and there was no showing of need. The court relied on the Michigan Court Rules providing for the scope of depositions and held that under those rules expert testimony was not testimony concerning relevant facts. G.C.R. 1963, 302.2. Consequently, the defendant had no absolute right to the discovery in question. *Klabunde* says nothing about privilege, it merely interprets provisions of the Michigan Court Rules. The applicable rule in the present case is Fed.R.Civ.P. 26 and the court has already interpreted that rule to include discovery of the material requested from the respondent. Further, *Klabunde* must be read in light of the facts presented.

> We do not decide whether in a proper case the testimony of an expert may not be compelled in a pretrial discovery order, under penalty of prohibiting use of his testimony at trial; all we say here is that, under the circumstances of this case, denial of the requested discovery, sought as a matter of right, was not an abuse of the trial court's discretion.

*Id.* at 282–83, 181 N.W.2d at 921.

■ The respondent offers no case to support an academic privilege. Privileges are the exception to the general duty of every citizen to provide evidence when necessary to further the system of justice. An academic privilege was recently asserted in *In re Dinnan,* 661 F.2d 426 (5th Cir. 1981), and rejected by the court. The court found, first of all, that academic freedom was not actually involved in that case but in dictum discussed privileges at length. With regard to an academic privilege the court said, "The appellant is claiming a privilege, *i.e.,* a right to refrain from testifying, that heretofore has not been considered or recognized by any court." *Id.* at 427. Exceptions to the demand for every man's evidence are not lightly created or expansively construed. *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1979). This court is unwilling to create a new privilege that would shield academics from testifying.

■ The respondent also says that the material is confidential and should, therefore, be protected. There is really no evidence in this case that any of the material is confidential and the court need not consider whether confidential material should be protected. In any event, a claim of confidential material is insufficient to support a blanket exemption.

### Refusal Based on the Constitution

■ Professor Snyder's claim for exemption asserts a right to refuse to give or produce evidence under the first amendment for the reason that he is a researcher and a writer and claims that a denial of this right would have a chilling effect on researchers and writers. The court agrees that the subpoena provides sufficient government action to raise the constitutional question in this case. However, the court does not believe that compelling Professor Snyder to testify violates any first amendment rights. The protection of the first amendment is designed to afford the right to write and to speak. It does not give a right to withdraw material written and published from public scrutiny, nor does it give a right to refuse to disclose facts discovered as a result of observations that are relevant in making a judgment as to the correctness of the researcher's published conclusions. The respondent argues that

compelling him to produce his records and research data will chill other writers and researchers. The possibility of being subpoenaed to testify exists for everyone. At any time a person can see something or hear something that will cause him or her to be subpoenaed to testify. Every person, within limits, is subject to a subpoena to tell about or produce information about what he or she saw or heard. In many respects Professor Snyder is no different than any other witness who may be called upon to give evidence.

■ Cases that have recognized a qualified right under the first amendment on behalf of writers have involved attempts to compel the disclosure of confidential sources. Two cases relied on by the respondent involved precisely this issue. See *In re Consumers Union of U. S., Inc.*, 495 F.Supp. 582 (S.D.N.Y.1980); *Richards of Rockford, Inc. v. Pacific Gas & Electric Co.*, 71 F.R.D. 388 (N.D.Cal.1976). Courts have recognized the importance of maintaining the flow of information to reporters and researchers and accordingly have afforded some protection for confidential information. This protection is not absolute but takes the form of balancing the competing interests in the particular case. *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). As pointed out earlier, the present case involves no attempt to compel the disclosure of confidential sources. Jeep Corporation wants the data underlying the study conducted by Professor Snyder. Jeep claims that they have no interest whatsoever in the names of persons supplying information to Dr. Snyder or in the names of particular accident victims and would stipulate to an order to strike out the names of any persons. Further, Dr. Snyder makes only a blanket claim that the material requested is confidential and provides no information to instruct the court why the material might be considered confidential. Based on the record there is no reason to believe that any of the data requested is confidential.

The limited protection given reporters and writers from providing testimony under the first amendment is given to preserve the flow of information from sources to these persons. This is clearly different from the situation before the court. When confidential sources are involved, the courts are concerned about not jeopardizing the flow of information from a third person. The requirement of disclosure of the identity of that third person may be sufficiently burdensome that he, or she, or others might choose not to provide information to a reporter. In the present case the court's concern is in balancing the minimal chance that compelling Dr. Snyder to testify or produce his underlying data would cause him to abandon research and writing as against the needs of the justice system to use basic research information, the results of which the researcher has placed in the public domain. As discussed above, the conclusion is clear that the exemption claimed is not justified. The court is not persuaded that the possibility of being subpoenaed will sufficiently chill writers and researchers to warrant a special exemption from the duty to provide evidence. See *Branzburg v. Hayes, supra*.

### Refusal Based on the Burden of Compliance

■ The Professor claims that having to produce his records and give testimony would be burdensome. He claims that to require him to be available in every lawsuit would create an extraordinary hardship on him and that the court should protect him. His claim must be kept in context with the way in which the system of administrating justice affects every citizen. Every person is burdened by having to disclose knowledge he acquires, even though it is acquired purely by accident. A person who sees an auto accident cannot refuse to testify because it burdens him. A person who witnesses a will cannot refuse to testify. All are burdened, yet some are burdened more than others. Fed.R.Civ.P. 45(b) permits the court to provide protection for an individual subpoenaed who is burdened by condition-

ing the denial of the motion to quash "upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." A researcher who spends a great deal of time and effort in uncovering information that becomes important in many lawsuits is subject to a heavy burden. The solution is not to cover-up the information or its data base because disclosure is too burdensome but to use the tools available to lessen the burden and to permit the information to become available. In this case Professor Snyder is entitled to a reasonable fee for testifying. This fee may include not only a professional fee and the cost of supplying the documents and remuneration for the inconvenience, but also could include in the appropriate case a charge for a portion of the expenses of the original research. Jeep Corporation is not entitled to have the benefits of the professor's research without advancing a reasonable fee. The court may also impose other conditions as necessary to relieve the burden imposed by the subpoena and will provide an opportunity for the respondent and the defendant to submit proposals in this regard.

*Refusal for Violation of Subpoena Rule*

Finally the respondent claims that he was improperly served and subpoenaed to appear in Oakland County rather than Washtenaw County, the county of his residence. Fed.R.Civ.P. 45(d)(2) permits depositions only in the county in which the deponent resides or transacts business or in any other convenient place as the court may select. To the extent that the subpoena requires Professor Snyder to appear for deposition in Oakland County, the subpoena is quashed. The Professor may only be deposed in Washtenaw County.

The parties will submit proposals to the Court to lessen the burden on Professor Snyder and compensate him adequately for his evidence.

So ordered.