In re the Motion of Richard G. SNYDER, Non-Party Petitioner.

J. Russell NOGA, Plaintiff,

v.

AMERICAN MOTORS CORPORATION, Defendant.

No. MISC. 1272.

United States District Court, D. Arizona, Tucson Division.

March 25, 1987.

Robert O. Lesher, Lesher & Borodkin, Tucson, Ariz., for non-party petitioner.

George J. Coleman, III, Robert J. Gibson, Snell & Wilmer, Phoenix, Ariz., for respondent.

WILLIAM D. BROWNING, District Judge.

This Order addresses the question whether a court can compel the author of a research report to serve as a witness in a lawsuit when the author is a stranger both to the events and to the parties involved in the suit.

J. Russell Noga filed a lawsuit in the District Court for the Western District of Pennsylvania against American Motors Corporation (AMC) for personal injuries arising from an accident involving an AMC Jeep. Under Fed.R.Civ.P. 45(b) and (d), AMC obtained from this Court a subpoena duces tecum against Richard G. Snyder, a retired safety researcher who now resides in Arizona. Snyder moves to quash the

subpoena because he has not consented to serve as an expert witness for any party in the Noga lawsuit, he did not witness Noga's accident, his research data are privileged, and the subpoena is excessively burdensome. The Court adds that Snyder has not consented to serve as an expert witness for the court under Fed.R.Evid. 706, nor is he a witness in related litigation. *See, e.g.,* In re *"Agent Orange" Product Liability Litigation,* 105 F.R.D. 577 (E.D.N.Y.1985) (discovery of experts retained in related lawsuits will be allowed in multidistrict litigation context).

AMC seeks to depose Snyder because he was one of four authors of a 1980 final report, "On-Road Crash Experience of Utility Vehicles," prepared for the Insurance Institute for Highway Safety by a research institute at the University of Michigan. Snyder and other researchers analysed a large number of accident reports and other data supplied them by several public and private sources, and performed some engineering studies of their own on sample vehicles. Most of their conclusions address general characteristics of utility vehicle accidents. A few of their conclusions, however, single out certain vehicles as being more of a hazard than others. The report is most critical of an AMC vehicle, the Jeep.

Plaintiffs in other actions have introduced Snyder's report as evidence against AMC, and AMC argues that the study weighs heavily against it with jurors. AMC seeks information to impeach an expert opinion, based on part on this study, that may be offered against its Jeep products at the trial.

AMC's subpoena requests the production of virtually every piece of paper involved in the study, from the initial search for funding, gathering of data from various sources, analysis of data, reviews of draft reports, to comments received after publication. For any missing document Snyder is to provide a written explanation of what the paper contained and why it is now missing. Snyder personally has none of the papers AMC seeks and in the seven years since publication of the study much of the "mountain" of material that went into it has "eroded" out of his former employer's possession, as well.

As clarified at oral argument, the subpoena seeks deposition testimony and documents about the data underlying Snyder's conclusions, and does not ask that Snyder develop new expert opinion about this material. *See, e.g., Kaufman v. Edelstein,* 539 F.2d 811, 822 (2nd Cir.1976) (court may compel testimony of unwilling expert witness having knowledge of facts relevant to case, but may not compel expert to testify as to his newly formed opinions); *Carter-Wallace, Inc. v. Otte,* 474 F.2d 529, 536 (2nd Cir.1972), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973) (court may compel expert to divulge previously formed opinions, if expert has testified previously and no other expert of similar qualifications is available); *Tahoe Insurance Co. v. Morrison-Knudsen Co., Inc.,* 84 F.R.D. 362, 364 (D.Idaho 1979) (members of a panel of experts who investigated a dam failure could be compelled to testify about their observations, but not about their opinions developed in the course of the investigation). *See generally* Maurer, *Compelling the Expert Witness: Fairness and Utility under the Federal Rules of Civil Procedure,* 19 *Ga.L.Rev.* 71, 82 n. 46 (1984) (reviewing legal distinction between compelling witnesses to apply their expertise in developing new opinions and compelling their disclosure of previously formed opinions).

AMC implicitly recognizes that Snyder has a right to apply his expertise only on a voluntary basis, but asserts that he has a duty to impart to AMC his first-hand historical account of the research effort leading up to his report. Common sense indicates that this distinction will be difficult if not impossible to honor in practice. Because most of the requested documents are now missing, AMC now can only hope to obtain Snyder's recollection of the materials. It is difficult to see how Snyder could invoke only his memory and not his expertise in this reconstruction process.

AMC has sought Snyder's account of this study through similar subpoenas at least three times. In 1982 the District Court for the Eastern District of Michigan refused to quash a similar subpoena brought by Jeep Corporation. *Wright v. Jeep Corp.*, 547 F.Supp. 871 (E.D.Mich.1982). The court sustained the subpoena on the ground that no privilege or immunity protected Snyder or his data from discovery. Citing *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), as authority that no person's evidence is protected except by constitutional, common-law, or statutory privilege, the *Wright* court found that no general academic privilege protected Snyder's information. *See* 547 F.2d at 875. The *Wright* court modified the place of the deposition, ordered that Jeep Corporation (a subsidiary of AMC) pay not only a reasonable fee and costs, but also a portion of the expenses of the original research, and requested proposals for further modifications "to relieve the burden imposed by the subpoena." *Id.* In its argument on the present motion to quash, AMC's counsel reported that AMC settled the lawsuit with Wright before this deposition could be taken. The *Wright* case prompted at least one critical comment in the legal literature. *See* Maurer, *Compelling the Expert Witness, supra.*

Shortly after the *Wright* decision, the Sixth Circuit upheld another decision from the Eastern District of Michigan, this one quashing AMC's subpoena of Snyder. *Buchanan v. American Motors Corp.*, 697 F.2d 151 (6th Cir.1983). The order to quash was upheld on the ground of burdensomeness. "The District Court did not err in finding improper the practice of calling an eminent expert witness (who is a stranger to the litigation) under a burdensome subpoena duces tecum that would require him to spend a large amount of time itemizing and explaining the raw data that led him to a research opinion adverse to the interest of a party which is the author of the subpoena." *Id.* at 152. The Sixth Circuit explicitly avoided any decision about the existence of a privilege or other immunity that might insulate academic researchers from discovery in general.

Counsel for AMC reported that subsequent to the *Buchanan* decision, the same district judge who decided *Wright* decided a third case, unreported. Despite the Sixth Circuit's decision in *Buchanan* the district court again ruled in favor of AMC. Counsel for AMC reported that this case, like *Wright*, settled before Snyder could be deposed.

Because of the settlements, Snyder has not had the opportunity to appeal the decisions denying his motions to quash. The Court notes that Snyder would be able to appeal a denial of his motion to quash only by refusing to cooperate with the subpoena and being found in contempt of court under Rule 45(f). *See National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174 (2nd Cir.1979). Thus, a stranger to the parties and to the incident giving rise to the lawsuit is required to risk an uncertain penalty for contempt against the uncertain outcome of an appellate court decision as to whether he had a legal duty to help AMC prepare its case.

■ Part of the uncertainty surrounding such discovery is that burdensomeness is often the only valid ground for quashing such subpoenas. In particular, Snyder's argument that his information is somehow privileged fails. *See, e.g., Kaufman v. Edelstein*, 539 F.2d 811, 819–21 (2nd Cir. 1976) (no federal common law privilege protects expert witnesses). This Court agrees with the finding in the *Wright* decision that there is no general academic privilege protecting Snyder in this instance, and that assertions of confidentiality of sources do not confer absolute immunity. That the *Wright* ruling was based upon Michigan law while this Court's ruling is based on Arizona law does not require a different result. *See, e.g., Palmer v. Fisher*, 228 F.2d 603 (7th Cir.1955), *cert. denied sub nom. Fisher v. Pierce*, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956). Snyder has not shown this Court any Arizona authority for such privilege, nor has the Court itself found such a privilege in the

state's constitution, statutes, or common law.

■ Following Rule 26(b)(1) and Rule 45(b), however, this Court may grant a protective order or quash a subpoena for being excessively burdensome, if the circumstances so require. The series of legal skirmishes AMC has imposed on a researcher who is a stranger to each of AMC's aforementioned lawsuits might suffice to establish the excessively burdensome nature of AMC's discovery effort. Snyder has incurred the legal expense and personal disruption required to respond to such subpoenas on at least four occasions. Snyder's counsel alleged that there are as many as eighty-eight suits involving utility vehicles pending in federal courts. Further, other makers of utility vehicles might also have an interest in drafting Snyder's expertise, because his report was critical of several makes in addition to Jeep. At some point, even a subpoena of modest scope will likely be quashed because it will be one too many.

The greatest problem with these subpoenas is that no final judgment will determine AMC's right to depose Snyder or to draft his testimony for a trial. AMC has not filed a claim against Snyder, judgment of which would be res judicata in a subsequent action. Nor is the issue of Snyder's deposition elemental to the dispute in Noga's tort suit, so that collateral estoppel can be raised in a subsequent discovery attempt. Nor does the relevance of Snyder's work to lawsuits against AMC come with a statutory limitations period, as this case well illustrates. Thus as a bar to further subpoenas arising from other lawsuits against AMC, or any other manufacturer whose vehicles were mentioned in the Snyder report, the ruling in this instance affords Snyder no more protection than *Buchanan*, *Wright*, and any other decision has.

Even if this were the first occasion on which AMC sought such discovery, this Court would consider it excessively burdensome given the amount of information it seeks, its collateral relationship to the Noga trial, and the amount of self-impeaching material the report itself contains.[1] The Sixth Circuit considered this discovery attempt overly burdensome in 1983. Now, several years later and following the retirement of the researcher, that effort is no less burdensome.[2]

This Court would also point out that solutions to the serious problems this motion raises do not seem to be available under the current rules of procedure and of evidence. The protections of Fed.R.Civ.P. 26(b)(4) do not extend to an expert who has not consented to participate in a lawsuit, because the rule applies only to facts known to and opinions held by experts that

---

1. As is probably characteristic of any formal scientific paper, this report comes replete with material for its self-impeachment. For example, throughout the procedure section, the authors identify several difficulties or weaknesses in the accident data provided by the states that could serve to undermine the conclusiveness of the results. Perhaps most damaging is the authors' theme that "utility vehicles" is an imprecise category. The authors report that police reports of accidents were sometimes unreliable in identifying whether the vehicle involved in an accident belonged in the study class or not, in part because "jeep," like "xerox" and "kleenix" is a trademark that has been appropriated by the public to refer to an entire class of products.

Appendix E of Snyder's report contains a table of approximate sampling errors for use in determining the reliability of the study's results. Furthermore, on pages 140 to 146 of the report, the authors discuss several problems that have

"a direct impact on [the report's] viability and implementation," each of which could be used on cross-examination to weaken the impact of the study's conclusions. The conclusions themselves suggest ways for improving the quality of the data, again offering grounds for opposing counsel's cross-examination of the expert who relies on this report.

2. The Court also notes that the first two items listed on AMC's subpoena demand any documents Noga might have supplied Snyder in consultation related to the present suit. Rule 26(b)(4) prohibits discovery of the names of experts consulted but not retained, and of materials or disclosures supplied by a party to a prospective expert witness who is not ultimately retained. *See* Fed.R.Civ.P. 26(b)(4)(B) advisory committee's note, 48 F.R.D. 487, 504; 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2033 (1970).

were acquired or developed in anticipation of litigation or for trial. Neither party here suggests that Snyder's work was carried out in anticipation of any litigation.[3]

Under the quasi-fiction that AMC seeks only Snyder's first-hand account of historical events and his previously formed opinions, and not his expert opinion per se, Snyder is not truly an involuntary expert witness. Instead, he is an ordinary "actor or viewer" witness to events that are relevant, if only collaterally, to Noga's trial. *See Quarantillo v. Consolidated Rail Corp.*, 106 F.R.D. 435, 437 (W.D.N.Y.1985). As such, there may be no legal basis upon which Snyder could demand the fee which AMC has volunteered to pay him. In fact, this Court's authority to sanction the payment of such a fee is problematic, since the payment of expert witnesses is the only exception to the common law rule that witnesses are not to be paid for their testimony.[4] If Snyder's evidence is discoverable at all, it is because his evidence falls within the scope of discovery described by Rule 26(b)(1), and not because he is an "expert witness." The federal procedural and evidentiary rules simply do not address the question of compensation for a witness whose participation in litigation is involuntary, and who has not witnessed the events giving rise to the litigation.

Several concerns suggest the need for more certainty in the disposition of discovery rights to academic research. The potential for repetition and the lack of finality can create serious problems for a researcher whose work is relevant to many actions. *See, e.g., Kaufman v. Edelstein*, 539 F.2d 811, 821 (2nd Cir.1976) (raising concern that the absence of an expert privilege could cause some experts to be summoned "too often"). Drafting a researcher some few times, but not "too often," provides his involuntary services only to the first few litigants who get to the courthouse, a result devoid of both fairness and sense.

The problem is intensified as such discovery attempts seem to be growing more common. *See, e.g., Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985) (district court was within its discretion to quash tampon manufacturer's subpoena against Center for Disease Control to divulge names and addresses of women who participated in research on toxic shock syndrome); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir.1984) (DES manufacturer won discovery, modified to protect confidentiality, of medical case histories of women with the type of cancer DES allegedly caused); *Dow Chemical Co. v. Allen*, 672 F.2d 1262 (7th Cir. 1982) (in cancellation proceeding against dioxin compound, manufacturer of the herbicide could not get enforcement of administrative subpoena to produce all notes, reports, data, and other papers in very low dosage toxicity studies being carried out by university researchers).

The potential for a chilling effect on research appears great. The cases are divided on whether discovery can go forward against experts who have no first hand knowledge about the injury suffered by a particular plaintiff, but who are well informed through their research on the general kind of injury. Each subpoena calls for a fresh weighing of its burdensomeness, relevance, alternative sources for the desired information, the needs of the case, and the importance of the issues at stake.

The validity of opinions formed and expressed in the context of disciplines oth-

---

3. AMC won protection for its own accident researchers by arguing that 26(b)(4) protected work done in anticipation of litigation in general, and not for a particular case. *See Hermsdorfer v. American Motors Corp.*, 96 F.R.D. 13 (W.D. N.Y.1982) (extending Rule 26(b)(4)(B)'s protection to evidence of AMC's experts hired for the dual purposes of preparing for pending litigation and for litigation expected on the basis of logical probability).

4. Reasonable costs for production of the documents AMC seeks could be recovered pursuant to Rule 45(b). Since these documents are largely missing now, AMC can only discover Snyder's account of the contents of the documents he used in the study. It is questionable whether Rule 45(b) could cover as "costs" payment for Snyder's time and expertise in producing this information in lieu of the documents.

216

er than the law should be tested by the relevant discipline's requirements for validity or acceptability. This Court is unwilling to substitute the adversarial process of the judicial search for truth for the epistemological standards set by other disciplines. Opportunity enough exists for an adversarial exploration of truth in litigation without the necessity of conscripting non-witness researchers into discovery and trial appearances.

Scientific and applied research is valuable to society, at least when it is carried out responsibly and competently. No privilege protects researchers against direct attacks on their work when it is carried out irresponsibly. However, discovery offers an avenue for indirect harrassment of researchers whose published work points to defects in products or practices. There exists also a potential for harrassment of members of the public who volunteer, under a promise of confidentiality, to provide information for use in such studies. *See, e.g., Andrews v. Eli Lilly & Co., Inc.*, 97 F.R.D. 494, 499–502 (N.D.Ill.1983) (in part to protect confidentiality of participants, court grants researcher's motion to quash subpoena of his collection of case histories of women with the type of cancer caused by DES), *rev'd sub nom. Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 565 (7th Cir.1984) (confidentiality can be protected by removal of identifying information from material produced).

This Court does not believe that AMC has to date abused discovery in its effort to depose Snyder. However, the potential for abuse is great, especially since no finality accrues and no statute of limitations runs to protect the researcher who has relevant information. A solution to the problem is not apparent under the existing rules of evidence and procedure. Members of both the legal and research communities would do well to consider the implications of the present law, and to propose amendments that would increase certainty as to the scope of discovery from "involuntary expert witnesses."

IT IS ORDERED that the Motion to Quash the subpoena duces tecum served on Richard G. Snyder by American Motors Corporation pursuant to J. Russell Noga's lawsuit against AMC in federal court in Pennsylvania is GRANTED.