**Marlene ANKER, et al., Plaintiffs,**

v.

**G.D. SEARLE & CO., a Delaware corporation, Defendant.**

**No. M–89–20.**

United States District Court, M.D. North Carolina.

May 26, 1989.

Roger P. Brosnahan, Jane E. Joseph, Martha K. Wivell, David Saggs, Minneapolis, Minn., for plaintiffs.

Michael Berens, Minneapolis, Minn., for defendant.

Richard W. Ellis, Robert R. Price, Raleigh, N.C., for Malcolm Potts.

## ORDER

RUSSELL A. ELIASON, United States Magistrate.

Plaintiffs have noticed the deposition of Dr. Malcolm Potts, who is not a party to this action, and issued a subpoena duces tecum pursuant to Rule 45, Fed.R.Civ.P., for his testimony and for the production of 77 categories of documents. Dr. Potts responded with a motion for a protective order seeking to postpone the deposition because of his immediate travel plans, which was shortly followed by a motion to quash the subpoena duces tecum pursuant to Rule 45(b), Fed.R.Civ.P., or in the alternative, or in addition thereto, to grant a protective order pursuant to Rule 26(c), Fed.R.Civ.P. Dr. Potts has filed three affidavits setting out the factual issues as he perceives them. None of the parties have filed affidavits or submitted evidence. While this matter is ostensibly a controversy between Dr. Potts and plaintiffs, the Court has directed that defendant Searle file a response and set out its position as well.

The matter before the Court involves six lawsuits filed in the federal court in Minnesota which consolidated them for discovery purposes. As pertinent to the instant controversy, the plaintiff women allege injury to themselves from the use of an instrument known as Copper–Seven ("Cu–7"), an intrauterine device ("IUD") which is manufactured by defendant. The product is employed by means of an inserter tube which is placed into the vagina, through the cervix, into the uterus. The device contains a tailstring extending from its lower end which is intended to assist in the removal of the device and as a means of ascertaining whether it remains properly inserted. The tailstring extends through the normally sterile cavity of the uterus, through the cervix, and into the bacteria laden vagina. It is plaintiffs' contention that the device has been negligently designed and that the tailstring facilitates bacterial colonization and migration from the vagina to the uter-

us causing increased pelvic inflammatory disease leading to inflammation, hysterectomies and/or infertility.

Plaintiffs seek to depose Dr. Potts and examine his general knowledge and education with respect to IUDs and their hazards, his association with defendant Searle and his research studies with respect to IUDs. Dr. Potts has not been listed as a witness by any party. Plaintiffs assert, however, that Dr. Potts may be a potential witness for defendant and, therefore, seek immediate access to his views. Plaintiffs base their apprehension on the fact that Dr. Potts was listed as a "percipient" witness in another IUD case brought against defendant in the federal court for the Central District of California. However, it does not appear that Dr. Potts was called as a witness in that case. Next, plaintiffs contend that Dr. Potts has personally corresponded with Searle's attorney and provided defendant with a declaration to the effect that his studies do not show that stringless IUDs are a safe alternative compared with IUDs having string attachments. Plaintiffs claim that defendant Searle unsuccessfully attempted to introduce this report in the California litigation.

Dr. Potts has responded through three affidavits showing that he is the President and Chief Executive Officer of a not-for-profit organization known as Family International Health ("FHI"). This organization studies family planning methods. It receives support from the Agency for International Development, the National Institute of Health and private foundations, such as the Mellon, Hewlett, Ford and Packard Foundations. The FHI is the largest organization in the world for conducting clinical trials on contraception. It has a full-time staff of 150 people and works with collaborating researchers in more than 50 countries.

Dr. Potts further states that neither he nor the FHI have received any fee or compensation for the study of IUDs either with or without strings. His organization did perform a "strings-no strings" study which was funded by the Agency for International Development. The study and its conclusion are all a matter of public record. Dr. Potts specifically states that defendant did not offer, nor did he request or take from defendant, any compensation with respect to the study. He does admit that defendant, as a member of the public, requested a declaration on the results of the study and that he (Dr. Potts) provided the information as he would to any other requester.

Dr. Potts addresses the burden of the subpoena indicating that he has authored or contributed to over 200 publications, many of which discuss IUDs and one-third directly concern contraception. The FHI itself has published 66 articles on IUDs between 1980 and 1987. Dr. Potts estimates that the document requests from the subpoena could easily include over 300,000 pages. He points out that many of the requests are already available to the public through publications. Some of the items are considered to be confidential such as research protocols and investigators' manuals.

While plaintiffs did not file controverting affidavits, they have narrowed their document requests from 77 to 55 categories. Nevertheless, the requests are still expansive, including Dr. Potts' curriculum vitae, all of the articles which he has written, copies of IUDs in FHI's possession, all notes and correspondence of any nature with G.D. Searle and Monsanto companies, along with notes of any meetings at which these companies may have been present. Plaintiffs want study protocols, investigators' manuals and related information, not only with respect to a specific study but all studies from 1985 to present involving IUDs.

Plaintiffs claim that they are entitled to expansive discovery because there is a high probability that defendant will use Dr. Potts and his studies at trial. On the other hand, they also claim that Dr. Potts is not an expert witness and they only seek facts concerning his scientific research. Dr. Potts, on the other hand, claims that he is a complete stranger to this litigation and, therefore, plaintiffs do not have any right to force him to divulge his research and in any event, the subpoena is entirely too

broad and unworkable and should be quashed in its entirety. Defendant states that, even if not designated as an expert witness by the parties, Dr. Potts would be deemed an expert witness by the Minnesota federal court based on a decision as to a similar situation in another CU–7 case recently tried there. However, he has not yet been named as an expert witness. (Most of the Minnesota cases have not yet reached the expert witness discovery stage.)

## Discussion

▮▮▮ Pursuant to Rule 45(b) and (d), Fed.R.Civ.P., a party may issue a subpoena for the purpose of taking the deposition of a non-party and also command that person to produce documentary evidence. Pursuant to Rule 45(b), a subpoena duces tecum requiring the production of documentary evidence is subject to being quashed or modified for being unreasonable, or conditionally allowed upon payment of ·production costs. It also may be the subject of a protective order in accordance with the provisions of Rule 26(c), Fed.R.Civ.P. *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017 (Fed.Cir.1986). When presented with a motion to quash a subpoena duces tecum which would foreclose all discovery, a court should first consider the possibility of utilizing protective orders in order to reallocate the burdens and thereby permit appropriate discovery. *Heat and Control, Inc. v. Hester Industries, Inc.,* supra at 1025; *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556 (7th Cir.1984).

▮▮ The scope of a subpoena duces tecum is very broad. Rule 45(d) adopts the standards set out in Rule 26(b)(1), Fed.R.Civ.P., which permits discovery of any nonprivileged matter relevant to the subject matter even if it would be inadmissible at trial, so long as it would appear reasonably calculated to lead to the discovery of admissible evidence. Courts, whose only connection with the controversy is to rule on discovery motions for the case which is pending in another district, should be cautious in restricting discovery because such "ancillary" courts will find it more difficult to have a complete understanding of the case and what is relevant and, therefore, should err on the side of permitting discovery. *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.*, 813 F.2d 1207, 1211–12 (Fed.Cir.1987); *Heat and Control, Inc.*, 785 F.2d at 1024.

In determining motions to compel discovery, the Court conducts a balancing test. It weighs the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party. *Truswal Systems Corp.*, 813 F.2d 1207; *Heat and Control, Inc.*, 785 F.2d 1017; *Deitchman*, 740 F.2d 556. The factors set out in Rule 26(b)(1)(i), (ii), (iii) provide some specific considerations for use in applying the balancing test. *Truswal Systems Corp.*, 813 F.2d 1207; *Marker v. Union Fidelity Life Insurance Company*, 125 F.R.D. 121 (M.D.N.C.1989). Thus, the Court may examine whether the discovery is cumulative or duplicative or could be obtained from an alternative source with less burden or expense, whether the party seeking the discovery has otherwise had ample opportunity to obtain it and whether the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, the parties' resources and the importance of the issue in the litigation. The Court should also consider societal interests in full and complete litigation along with other important values which may deserve confidentiality or protection even though not given formal privilege status. *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 169–70 (E.D.N.Y.1988).

In view of this policy favoring liberal discovery, Dr. Potts bases his opposition on the grounds that he is a stranger to the litigation, being neither a party nor a fact witness. In addition, he asserts that plaintiffs seek to depose him concerning his expertise and scientific research and this improperly invades and burdens academicians and independent researchers. In addition, Dr. Potts also relies on the burdensomeness of the document request as a basis for totally quashing the subpoena.

Dr. Potts' status as a non-party and as a non-fact witness does not alone serve as a basis to quash a deposition. Being a non-party is only one factor which the Court should consider in balancing the need for, and relevance of, the evidence versus the burdensomeness and hardship to the deponent. When the burden of discovery is heightened because a person is a non-party, the Court should first attempt to alleviate undue hardship through the assessment of costs and or the issuance of a protective order. *Truswal Systems Corp.,* 813 F.2d at 1210; *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1277 (7th Cir.1982).[1]

■ Dr. Potts' next line of defense is that he is an independent researcher. While not making a direct claim, there is a hint in his argument that the Court should afford some privilege for academicians, researchers or other experts from having to involuntarily provide a party to the lawsuit with their expertise. However, non-retained or involuntary experts or researchers do not have any federal statutory, case law or common law privilege which protects against their having to involuntarily share their expertise with the parties in the litigation. *Kaufman v. Edelstein,* 539 F.2d 811, 820 (2d Cir.1976); *Wright v. Jeep Corp.,* 547 F.Supp. 871 (E.D.Mich.1982); *In re Snyder,* 115 F.R.D. 211 (D.Ariz.1987). Nor does North Carolina law provide privilege protection for academic or scientific researchers.[2] *See generally In re Hayes,*

200 N.C. 133, 156 S.E. 791 (1931), and Annotation, *Compelling Expert to Testify,* 77 A.L.R.2d 1182 (1961).

■ Even if not entitled to a privilege, Dr. Potts asks the Court to consider his status as a non-party, an independent researcher, and an involuntary expert witness and use its discretion to quash the subpoena. A basic premise in American jurisprudence is that the court has the right to every man's evidence unless protected by constitutional, statutory or common law privileges. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Notwithstanding, a court may deny discovery of sensitive or confidential information on public policy grounds after weighing all of the factors of the balancing equation. *See Solarex Corp. v. Arco Solar, Inc., supra; Ross v. Bolton,* 106 F.R.D. 22 (S.D.N.Y.1985).

■ Requests to discover the knowledge and expertise of non-parties may take different forms. Sometimes the requests seek only the expert's historical opinions or knowledge. *Kaufman v. Edelstein,* 539 F.2d 811. At other times, the information is largely found in documents or records. *Deitchman,* 740 F.2d at 566 (scientific research data); *Truswal Systems Corp.,* 813 F.2d 1207 (sensitive business records); *Heat and Control, Inc.,* 785 F.2d 1017 (trade secrets). And sometimes the request seeks both records and the expert's

---

1. One court has raised a question as to whether a non-party independent expert neither retained nor consulted by either side may be paid an expert witness fee for his testimony. *See In re Snyder,* 115 F.R.D. 211 (D.Ariz.1987). In *Snyder,* the court reasoned that the protections of Rule 26(b)(4), Fed.R.Civ.P., with respect to granting expert witness fees did not apply. An independent expert would not fit within the rule since neither party retained or employed him. The court correctly noted that federal procedural and evidentiary rules do not address the question of compensating an expert witness whose participation in the litigation is involuntary. However, it would seem that even though the Court could not directly order that expert witness fees be paid, it could issue a protective order pursuant to Rule 26(c), Fed.R.Civ.P., finding that the economic burden to the involuntary expert, without adequate compensation, requires prohibiting the taking of the deposition.

This would appear to be an indirect but effective means of resolving the problem. *See also In re Agent Orange Product Liability Litigation,* 105 F.R.D. 577, 581–2 (E.D.N.Y.1985) (inherent authority of court).

2. This action is premised on diversity of citizenship jurisdiction, 28 U.S.C. § 1332, and, therefore, Rule 501, Fed.R.Evid., states that state law provides the rule with respect to privileges. In the enforcement of a subpoena for a witness who has no connection to the lawsuit and is not a party, the Court should normally look to the place of deposition in order to determine privileges. *See Connolly Data Systems v. Victor Technologies, Inc.,* 114 F.R.D. 89 (S.D.Cal.1987). In the instant case, Dr. Potts' deposition was noticed for North Carolina, which likely would apply its own law as to privileges. *See generally Tennessee Carolina Transp., Inc. v. Strick Corp.,* 283 N.C. 423, 196 S.E.2d 711, 720 (1973).

explanation of those records in order to make the records comprehensible. *Wright v. Jeep Corp.*, 547 F.Supp. 871; *In re Snyder*, 115 F.R.D. 211 (accident study research records).

The weight of federal authority and the better decided cases hold that a non-party, involuntary expert or non-fact witness does not have a right to decline to give testimony or produce documents even though the witness will be compelled to divulge matters which are normally considered confidential, sensitive, proprietary or which pertain to his expertise or special skill. *Truswal Systems Corp.*, 813 F.2d 1207; *Heat and Control, Inc.*, 785 F.2d 1017; *Deitchman*, 740 F.2d 556; *Kaufman v. Edelstein*, 539 F.2d 811; and Annotation, *Expert Testimony Refusal*, 50 A.L.R.4th 680 (1986). The benefit to our system of justice in arriving at factually accurate and meaningful decisions will often outweigh the interest of the involuntary witness even though the compulsion may infringe upon the witness' means of livelihood.

In deciding to enforce such a subpoena, the Court needs to be solicitous of the extra intrusion of the subpoena into the affairs of the involuntary expert or non-fact witness. Therefore, one important criterion is that the request only seek historical opinions or data and not require the non-party to analyze or re-analyze data and form a new opinion. *See* Annotation, *Expert Testimony Refusal*, 50 A.L.R.4th 680. Another critical factor concerns whether the expert is in a unique position to provide evidence not reasonably available from an alternative source which is essential to a claim or whether denial of discovery will result in an inability to meaningfully defend or cross-examine with respect to a claim.

Thus, in *Deitchman*, 740 F.2d 556, a Dr. Herbst had established himself as an authority with respect to the effect of diethylstilbestrol ("DES") and had set up a means of collecting evidence. He produced several articles which were used by plaintiffs' attorneys and their experts in DES litigation. The court found Dr. Herbst, through publication of various articles on the subject of DES, had established himself as a preeminent and dominant authority and that his articles were universally relied upon by plaintiffs' experts in DES litigation. It further found that without access to Dr. Herbst's data, upon which the articles were based, defendant would be unable to effectively defend or cross-examine plaintiffs' experts on the issue of causation. It found that even though Dr. Herbst would not testify for plaintiffs, his articles had uniquely thrust him into DES litigation and that the interests of justice required defendant to have some access to the data.

Likewise, in *Kaufman v. Edelstein*, 539 F.2d 811, the court refused to quash subpoenas directed to two unwilling expert witnesses from whom the government sought their prior expressed opinions and advice which they gave to users of computer systems. The court found this testimony necessary for the government's antitrust litigation and indicated that it would not require a very substantial showing of necessity or lack of an alternative source of evidence since the government had demonstrated these witnesses were eminently qualified and had some unique perspective.

In cases which have declined to force a non-party to supply confidential or expert information, there is a concommitant finding that the need for the information is simply not compelling under the circumstances. Thus, in *Dow Chemical Co. v. Allen*, 672 F.2d 1262 (7th Cir.1982), the plaintiff Dow Chemical Co. faced possible government cancellation of the right to manufacture certain herbicides. It sought the research records of incomplete toxicity studies from the non-party respondent scientist. The Court allowed the subpoena to be quashed finding the probative value of the information questionable since the studies were incomplete. Furthermore, the government's action was not going to rely on the specific studies which were under subpoena.

In *Buchanan v. American Motors Corp.*, 697 F.2d 151 (6th Cir.1983), and in *In re Snyder*, 115 F.R.D. 211, the courts quashed a subpoena of an involuntary expert which sought to have him explain his

research methods and opinions with respect to automobile crash studies. In *Buchanan,* the court recognized that trial courts must be given a degree of discretion in resolving such issues. It affirmed the lower court's decision to quash the subpoena finding it burdensome to the expert to spend a large amount of time itemizing and explaining the raw data of his research. It further found that there was no indication that the party did not have other expert witnesses available. In *In re Snyder* the court based its decision to quash the subpoena on the same factors. In addition, the court found the subpoena to be particularly burdensome because most of the expert's research data was missing so that he would be called upon to provide a large amount of personal recounting as to the documents which he produced. Perhaps even more importantly, the court noted that the report, which the expert had prepared, itself contained a substantial amount of impeaching material. It found that the claim or defense of the party issuing the subpoena would not be jeopardized.

In instances where a subpoena is quashed, the court often discusses the burden on the expert who may well be subject to multiple subpoenas from many plaintiffs such as may occur in DES litigation, automobile crash litigation or IUD litigation. *See, e.g., In re Snyder,* 115 F.R.D. 211. Rarely should this factor alone justify quashing a subpoena to a non-party. As noted in *Kaufman v. Edelstein,* 539 F.2d 811, the Court should first require the non-party to show that the subpoena in fact will be burdensome. In the instant litigation, Dr. Potts raises the specter that he may be subpoenaed as a witness in many IUD cases. The short answer is that this is the first subpoena which he has received and he has not yet been deposed in IUD litigation. In multiple plaintiff litigation, such as this, if an expert gives one deposition and produces records, the court may protect the non-party, involuntary expert by requiring that the party who conducts the deposition keep such records and make them available to subsequent requesters. Then other courts may require potential inquisitors to show why a review of previously taken depositions and document production would not be sufficient to satisfy their needs.

The Court, therefore, concludes that respondent Dr. Potts' request to quash the subpoena on the grounds that he is a non-party, involuntary expert and independent researcher, must be denied. However, in order to be entitled to conduct a deposition or review its records, the plaintiff must demonstrate that the relevance and need for the evidence outweigh the burden and prejudice to the non-party.

In the instant case, plaintiffs do not appear to be asking Dr. Potts to form a new opinion but apparently only want to examine his past ones. However, plaintiffs do not demonstrate that the records and opinions are unique and otherwise unavailable so as to be critical to their case. Nor do plaintiffs show that Dr. Potts' research and opinions have been or will be relied upon by defendant and its experts so that without a deposition of Dr. Potts and examination of his research, plaintiffs will be unable to present their claim or effectively defend against the evidence which defendant will produce. Plaintiffs do not show that any other expert, who likely may testify in this litigation, has ever cited or relied upon Dr. Potts' opinions or articles. Nor have plaintiffs demonstrated that the research papers issued by Dr. Potts and his Institute are written in such a fashion so as to make it impossible to critically examine and evaluate the reports because they do not set out the methods and procedures for gathering data.

It should be noted that plaintiffs not only seek the research data and methods behind the scientific papers but Dr. Potts' deposition as well. Yet, plaintiffs have not established that Dr. Potts' opinion is relevant to the controversy in any way. He has not been named as an expert witness yet. If defendant decides to call Dr. Potts as an expert witness at trial, that matter must be regulated by the federal court in Minnesota where this action will be tried. If defendant does not list Dr. Potts as an expert witness for trial but the deposition of defendant's experts show a heavy reliance on

Dr. Potts' opinions and work so as to justify his deposition, the Minnesota federal court may well permit plaintiffs to depose Dr. Potts at that time and this Court would extend weighty deference to that decision in enforcing a subpoena.

If plaintiffs feel that defendant has employed Dr. Potts for this or in other prior or pending CU–7, IUD litigation, but will not call him as a witness for trial, then plaintiffs must proceed to obtain an order from the Minnesota court pursuant to Rule 26(b)(4)(B), Fed.R.Civ.P., to depose a non-testifying expert upon showing exceptional circumstances and an impracticability of obtaining facts or opinions by other means. *In re Agent Orange Product Liability Litigation*, 105 F.R.D. 577 (E.D.N.Y.1985). However, the present evidence does not show that Dr. Potts was retained or specially employed for this or related IUD litigation. Finally, to remove any uncertainty, plaintiffs can request the Minnesota federal court to require defendant to disclose any "independent" or "percipient" witnesses at the time expert witness lists are exchanged.[3] In short, the Court does not perceive that plaintiffs will subsequently be unfairly surprised by the decision today to quash the subpoena.

In summation, the Court finds plaintiffs' subpoena to Dr. Potts to be premature and not substantiated at this time. Dr. Potts demonstrates through affidavits that the subpoena duces tecum is substantially burdensome and will require the production of hundreds of thousands of documents. Plaintiffs' purpose in seeking the deposition and documents at this time is based on a potential, not actual, threat. Even though the documents are generally relevant to the subject matter of the lawsuit, indeed, some of the published papers of the FHI would appear to render an opinion contrary to plaintiffs' general claims, plaintiffs must show more than general relevancy in order to compel the deposition and documents of a non-party, non-fact witness. Plaintiffs must show a substantial need which outweighs the burden and prejudice to the non-party. At this time, the balance favors Dr. Potts.

In so deciding, the Court declines to engage in a process of narrowing plaintiffs' requests for documents to a manageable size. Much of the relevant material, such as papers and research results, are publically available. Second, in the present context, the Court finds plaintiffs' request for arguably 300,000 documents, to be sufficiently overly broad, unmanageable and burdensome so as not to justify such an effort. Therefore, Dr. Potts' motion to quash the subpoena duces tecum shall be granted.

IT IS THEREFORE ORDERED that the deponent's motion to quash the subpoena duces tecum be, and the same hereby, is granted.

---

**3.** Defendant states that the Minnesota court would consider Dr. Potts to be an expert witness.