**Debra A. SIMON and George Simon, et al., Plaintiffs,**

v.

**G.D. SEARLE & CO., Defendant.**

Civ. No. 4–80–160.

United States District Court, D. Minnesota, Fourth Division.

May 8, 1987.

Michael V. Ciresi, Roger P. Brosnahan, Jonathan S. Parritz, Robins, Zelle, Larson

& Kaplan, Minneapolis, Minn., for plaintiffs.

Michael Berens, Madge S. Thorsen, Jeanne M. Gode, Oppenheimer Wolfe & Donnelly, Minneapolis, Minn., for defendant.

### ORDER

RENNER, District Judge.

Before the Court is the appeal of defendant, G.D. Searle & Co. ("Searle") from Paragraph One of Special Master Peter N. Thompson's March 12, 1987 Discovery Order. The appeal has been decided without oral argument. Roger Brosnahan and Michael V. Ciresi of Robins, Zelle, Larson & Kaplan represent plaintiffs. Michael Berens and Madge S. Thorsan of Oppenheimer, Wolff & Donnelly represent defendant.

On February 3, Searle's expert witness, Dr. Daniel R. Mishell, M.D., received a deposition subpoena duces tecum issued from a California District Court requiring him to produce *inter alia:*

> All documents relating in any way to the study by Dr. Moyer and yourself in which you are redoing your 1965-55 Loop IUD hysterectomy study. This request includes, but is not limited to, all lab notebooks, data or followup forms, medical records, protocols, correspondence with G.D. Searle, or its representatives, checks and billings.

Counsel for Searle objected to the subpoena and the requested documents relating to the Study were not produced. Plaintiffs moved before the Special Master to compel production.

The Special Master determined that the District Court for the District of Minnesota did not have jurisdiction to enforce a subpoena duces tecum issued by a California District Court against Dr. Mishell, a California resident. He determined, however, that the Minnesota District Court could properly require Searle to produce those documents in its custody or control responsive to the subpoena, and so ordered.

The Study at issue in this appeal is an incomplete and ongoing follow-up of a bacteriological study of IUD's conducted in the mid-1960's by Drs. Daniel Mishell and Dean L. Moyer. The Study's purpose is to determine the bacterial content of the uterine cavity in non-IUD users and long-term IUD users.

Dr. Moyer is the Study's principal investigator. However, Dr. Mishell testified that the Study is a collaborative effort. He prepared the Study's clinical protocol and intends to co-author a paper on the Study. There is no dispute that Searle funds the Study.

For reversal, Searle contends that the Special Master erred by recognizing his lack of jurisdiction to enforce a subpoena issued to Dr. Mishell, but nonetheless ordering Searle to produce the requested documents. Specifically, Searle notes plaintiffs' failure to first serve Searle with a request for production pursuant to Fed.R. Civ.P. 34.

Alternatively, Searle contends that even if the Special Master properly exercised the Court's jurisdiction, the incomplete research data ordered produced is not discoverable. Applying a balancing test weighing the hardship to the parties involved, Searle argues that the "harm to Dr. Moyer from premature disclosure of his research and the infringement upon his academic freedom outweighs the Plaintiffs' need for the incomplete study." Memorandum, in Support of Defendant's Appeal from Special Master's Discovery Order at pg. 5.

 The Court rejects these arguments and affirms the Special Master. The Special Master's Order does not, as Searle contends, erroneously require production of research data in the physical control and custody of Dr. Moyer. Rather the Order compels production of those materials by Searle based on the reasonable conclusion that the company has control over or custody of the documents at issue. In light of Dr. Mishell's involvement with the project, and Searle's funding, Searle's contention that the Study is Dr. Moyer's alone is simply untenable.

Plaintiffs' failure to make a Rule 34 request for production by no means invali-

dates the Special Master's Order. Some courts treat a request to compel production in the absence of a Rule 34 request as a Rule 34 request. *See e.g. Synanon Church v. United States,* 579 F.Supp. 967, 976, (D.D.C.1984); *Eglin Federal Credit Union v. Cantor,* 91 F.R.D. 414, 417 (N.D. Ga.1981). Others decline to consider a motion to compel production until a Rule 34 request is properly served. *See Grissom v. N.L.R.B.,* 364 F.Supp. 1151, 1153–54 (M.D. La.1973). Such orders are premised on the principle that the party subject to the request should have an opportunity to voluntarily comply. *Eglin Federal Credit Union, supra,* 91 F.R.D. at 417; *Grissom, supra,* 364 F.Supp. at 1154.

In the present case, voluntary compliance is not at issue; no purpose is served by treating plaintiffs' motion as a Rule 34 request or declining to consider the motion. Searle asserted in its initial argument before the Special Master, as well as in papers in support of the instant appeal, that it will not produce Study documents voluntarily.

It is indeed true that when protection from a discovery order is sought, the Court must balance "the hardship to the party [or person] against whom the discovery is sought if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied." *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 559 (7th Cir.1984). Searle argues that if discovery of the Study is allowed to proceed, Dr. Moyer's reputation will be affected, the Study itself may be undermined and Searle's ability to secure the services of independent researchers may be impaired. These important concerns, urges Searle, counterbalance plaintiffs' need for discovery. The Court disagrees. Balancing Searle's stated interests against plaintiffs' substantial need for data from the Study favors discovery.

The requested information is clearly necessary for plaintiffs to effectively cross examine Dr. Mishell concerning his expert opinions. Dr. Mishell's interrogatory answers indicate that his opinions will be based on "research, investigations and studies he has participated in exploring the bacteriology and pathology, if any, of the upper and lower human female genital tracts in the presence or absence of intrauterine contraceptives." Nothing suggests Dr. Mishell will, or would ever be able to, completely exclude the study at issue from the background of information and clinical experience forming the basis of his opinions.

Moreover, during deposition, Dr. Mishell testified that he will testify to two opinions [1] based solely on the Searle-funded collaborative study with Dr. Moyer. Searle's post-motion offer to strike these paragraphs from Dr. Mishell's Rule 26(b)(4) answers does not eliminate plaintiffs' need to examine the data with respect to other Mishell opinions that, while not based solely on the Study, are based on his general experience in the area, including the Study.

As stated by both parties and the Special Master, Dr. Mishell testified to the preliminary results of this Study in *Marder, et al. v. G.D. Searle,* No. 4–8213506 (Md.1985). Searle further states that Dr. Mishell also testified about the Study in *Sires v. G.D. Searle* (citation unavailable), a case recently tried in Los Angeles. Such testimony belies Searle's argument that disclosure of the incomplete or preliminary data will adversely affect the Study, Dr. Moyer's reputation, or Searle's interest in maintaining services of independent researchers.

More importantly, as determined by the Special Master, this testimony constitutes a waiver of the confidential nature of the data. Searle's citation to *Rogers v. Proctor & Gamble, Co.,* 107 F.R.D. 351 (E.D. Mo.1985), does not alter this conclusion. In *Rogers,* the Court refused to lift a protective order restricting discovery of incomplete research allegedly submitted for pub-

---

**1.** These opinions are:

14. The Cu–7 does not act as a platform for or a nidus of infection within the uterine cavity or other parts of the female reproductive tract; and

15. Pathogenic bacteria in significant numbers do not adhere to those portions of the Cu–7 or its tail string which reside above the internal cervical os;

lication. Significantly, however, the Court noted it did not know whether part or all of the research was submitted or whether the research was, in fact, accepted for publication. *Id.* at 353. Here, in contrast, data from the Study has clearly been made public as a result of Dr. Mishell's prior testimony. This publication is what constitutes the waiver of confidentiality.

Notwithstanding this waiver of confidentiality, the Court finds it appropriate to restrict dissemination of data obtained from the Study to counsel of record and their respective expert witnesses. *See e.g. F.T.C. v. Lonning,* 539 F.2d 202, 211 (D.D. C.1976).

Accordingly, based on the foregoing, and a review of the entire file and record, IT IS HEREBY ORDERED that defendant's appeal be denied.

IT IS FURTHER ORDERED that disclosure of data acquired from Plaintiffs' discovery of the contested Study be limited to counsel of record and their respective expert witnesses.