OPINION OF THE COURT
Joseph C. Teresi, J.
Plaintiffs move this court for summary judgment declaring the provisions of the 1993-1994 and 1994-1995 State Operations Budget Bills which granted the Comptroller of the State of New York the authority to conduct audits of the plaintiffs pursuant to section 4308 of the Insurance Law to be unconstitutional. Defendants oppose this motion and seek an order sustaining the constitutionality of the Comptroller’s auditing power and seeking compliance by plaintiffs with subpoenas issued by defendant. Plaintiffs oppose the cross motion.
The crux of plaintiffs’ argument is that the subject provisions of the budget bills are unconstitutional because the New York Constitution prohibits the Legislature from granting authority to the Comptroller to do audits of a private corporation. Plaintiffs allege violations of NY Constitution, article V, § 1 and article III, § 1.
*170 At issue is the 1993 State Operations Budget Bill (L 1993, ch 50) which states: "Notwithstanding any law to the contrary, the comptroller may at his discretion conduct any or all management and/or financial audits permitted or required by article 43 of the insurance law.”
The 1994 State Operations Budget Bill (L 1994, ch 50) also allocated $1.2 million stating: "For sub-allocation to the department of audit and control for services and expenses of conducting any management and/or financial audits required by article 43 of the insurance law.”
Lastly, chapter 60, § 11 of the Laws of 1994 stated: "(3) for the department of audit and control for services and expenses of conducting any management and/or financial audits required by article 43 of the insurance law shall not be expended until the superintendent of insurance and the state comptroller agree to a plan as to the use of these funds, provided that the comptroller may at his discretion conduct any or all management and/or financial audits permitted or required by article 43 of the insurance law”.
Insurance Law § 4308 (d), (e) cited to both bills as the parameters of audits conducted either permitted or required states:
"(d) The superintendent shall order an independent management and financial audit of corporations subject to the provisions of this article with a combined premium volume exceeding two billion dollars annually in order to develop a detailed understanding of such corporation’s financial status and to determine the viability of such corporation’s products. Such audit shall be performed by an organization upon submission of a program plan in response to a request for proposal approved by the superintendent in consultation with the commissioner of health and the state comptroller. Such audit shall not be performed by any organization that has in any way performed or furnished services of any kind to the corporation within the past five years, unless it is adequately demonstrated that such services would not compromise that organization’s performance and objectivity. The audit shall be completed and a report submitted by May first, nineteen hundred ninety-three to the superintendent, the commissioner of health, and the chairs of the senate and assembly committees on health and insurance. The scope of the audit shall include, but not be limited to, financial and competitive position, corporate structure and governance, organization and management, strategic direction, rate adequacy, and the regulatory and competí *171 tive environment in the state of New York. Specifically, the audit shall include, but not be limited to:
"(i) determining the corporation’s financial and market position, including its reserves, trends in membership, market share, and profitability by market segment;
"(ii) evaluating the corporation’s product offerings with respect to market requirements and trends, the corporation’s responses to the New York health care market, and its management of medical claims costs;
"(in) assessing the effectiveness of the organizational and management structure and performance, including, but not limited to, possible improvement in the size, structure, composition and operation of the board of directors, productivity improvement, information systems, management development, personal practices, mix and level of skills, personnel turnover, investment practices and rate of return upon investment activities;
"(iv) analyzing the corporation’s strategic directions, its adequacy to meet competitive, market, and existing regulatory trends, including an evaluation of the use of brokers in marketing products, and the impact of those strategies on the corporation’s future financial performance and on the health care system of New York;
"(v) evaluating the adequacy of rates for existing products, particularly (but not limited to) small group, medicare supplemental, and direct payment to identify areas that may need immediate remedial attention;
"(vi) identifying any changes to the regulatory and legislative environment that may need to be made to ensure that the corporation can continue to be financially viable and competitive;
"(vii) identifying and assessing specific transactions such as the procurement of reinsurance, sale of real property and the sale of future investment income to improve the financial condition of the corporation; and
"(viii) evaluating and identifying possible improvements in the corporation’s managed care strategies, operations and claims handling.
"(e) Notwithstanding any other provision of law, the superintendent shall have the power to require independent management and financial audits of corporations subject to the provisions of this article whenever in the judgment of the superintendent, losses sustained by a corporation jeopardize its *172 ability to provide meaningful coverage at affordable rates or when such audit would be necessary to protect the interests of subscribers. The audit shall include, but not be limited to an investigation of corporation’s provision of benefits to senior citizens, individual and family, and small group and small business subscribers in relation to the needs of those subscribers. The audit shall also include an evaluation of the efficiency of the corporation’s management, particularly with respect to lines of business which are experiencing losses. In every case in which the superintendent chooses to require an audit provided for this subsection, the superintendent shall have the authority to select the auditor. Any costs incurred as a result of the operation of this subsection shall be assessed on all domestic insurers in the same manner as provided for in section three hundred thirty-two of this chapter.”
Initially this court notes that the appropriate standard of review as stated in Pharmaceutical Mfrs. Assn. v Whalen (54 NY2d 486, 493-494) is that: "Moreover, every legislative enactment enjoys a strong presumption of constitutionality which, although rebuttable, requires the challenging party to demonstrate that the enactment is unconstitutional beyond a reasonable doubt. (See, e.g., Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, 51 NY2d 338, 344; Town of Huntington v Park Shore County Day Camp of Dix Hills, 47 NY2d 61, 65; Montgomery v Daniels, supra.)”
The main issue before this court is whether the Comptroller has the constitutional authority to conduct audits of the plaintiffs. This court finds the Comptroller does have the authority, and the Comptroller’s audits conducted under the budget bills are indeed audits and not "administrative reviews”.
NY Constitution , article V, § 1 states:
" § 1. [Comptroller and attorney-general, election, qualifications and duties; payment of state moneys without audit void]
"The comptroller and attorney-general shall be chosen at the same general election as the governor and hold office for the same term, and shall possess the qualifications provided in section 2 of article IV. The legislature shall provide for filling vacancies in the office of comptroller and of attorney-general. No election of a comptroller or an attorney-general shall be had except at the time of electing a governor. The comptroller shall be required: (1) to audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of *173 accounting as are necessary for the performance of the foregoing duties. The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void, and may be restrained upon the suit of any taxpayer with the consent of the supreme court in appellate division on notice to the attorney-general. In such respect the legislature shall define his powers and duties and may also assign to him: (1) supervision of the accounts of any political subdivision of the state; and (2) powers and duties pertaining to or connected with the assessment and taxation of real estate, including determination of ratios which the assessed valuation of taxable real property bears to the full valuation thereof, but not including any of those powers and duties reserved to officers of a county, city, town or village by virtue of sections seven and eight of article nine of this constitution. The legislature shall assign to him no administrative duties, excepting such as may be incidental to the performance of these functions, any other provision of this constitution to the contrary notwithstanding. ”
This court sees no limitation in this language to preclude the challenged audits. They are clearly authorized under Insurance Law § 4308 (d), (e). The mere fact that the 1925 constitutional amendment prevented the Legislature from assigning administrative functions hardly restricts the Comptroller from those new duties assigned by the Legislature not in conflict with NY Constitution, article V, § 1. This court finds that the plain reading of article V, § 1 allows the Legislature to assign auditing functions to the Comptroller, as enunciated by the Court of Appeals in Doctors Council v New York City Empls. Retirement Sys. (71 NY2d 669, 675): "Consideration of e00rinsic factors is impermissible where the Legislature’s direction is clear; where the statute is not ambiguous when read in context; where the plain meaning of the statute would not lead to ' "absurd or futile results” ’ or even unreasonable results ' " 'plainly at variance with the policy of the legislation as a whole’ ” ’ (New York State Bankers Assn. v Albright, 38 NY2d 430, 437, supra, quoting United States v American Trucking Assns., 310 US 534, 543-544). Nor is there in this case any 'extensive legislative history [which] shows that the literal reading proposed * * * would frustrate the statutory purposes’ (Uniformed Firefighters Assn. v Beekman, 52 NY2d 463, 471, supra). ”
In this case the plain reading of article V, § 1 imposes limited restrictions on the duties which may be delegated to *174 the Comptroller. Nothing in article V, § 1 limits the Legislature’s ability to delegate a State-authorized audit (section 4308 [d], [e] of the Insurance Law) to the State’s chief auditor who has the unique expertise to perform this onerous task. The court finds no violation of article III, § 1 as the Legislature had the authority to so delegate as previously discussed.
Lastly, this court will not order the plaintiffs to comply with the Comptroller’s subpoenas dated September 29, 1994. Rather the court will strike the subpoenas as onerous and overly broad. This is not to say that the defendant does not have the power to subpoena as alleged by plaintiffs. This court finds the issuance of the subpoenas proper under State Finance Law § 9 and CPLR 2302. Plaintiffs’ argument that as the Legislature did not specifically grant subpoena power in these budget bills no such power exists is without merit.
However, after a full review of this record the court will quash the subpoenas as being unduly burdensome on the plaintiffs. The court notes that the physician /patient privilege may and will be abrogated by this court in this case as the Legislature’s intent is clear. The court also notes that Mental Hygiene Law § 33.13 (c) (1) restriction will be lifted as the court would find the interest of justice standard to be met in this case. This is also the case regarding alcohol and substance abuse records.
The court also finds plaintiffs’ proprietary information claim unavailing especially in light of the fact that similar information previously has been made available to the Comptroller.
Lastly, the court finds the plaintiffs have, in affidavit form, demonstrated that compliance with the subpoenas would be unduly burdensome and cost millions of dollars. Defendants dispute this claim as grossly inflated yet offer no estimate of the actual costs in dollars or hours. To subject plaintiffs to the costs and time constraints of complying with article 27-f of the Public Health Law with regard to 68 million claim files alone, leads this court to believe a simpler way must be found to conduct the audits. (Matter of Reynolds Tobacco Co., 136 Misc 2d 282 [1987].) If the purpose of the audit is to save the New York State insureds money and to determine that these companies are fiscally sound, the imposition of unnecessary and exorbitant administration and record-producing expenses is contrary to the public’s interest. A less intrusive, less expensive and more efficient time-consuming approach should be utilized by the Comptroller in having records produced.