Holly M. SMITH, Administratrix of the Estate of William R. Smith, Deceased, and Individually as the Widow of William R. Smith and as Parent of and on behalf of the Infant Child, Ashley Marie Smith, Plaintiff,

v.

The DOW CHEMICAL COMPANY, PPG Industries, Inc., and Shell Oil Company, Defendants.

No. 94–CV–393S(H).

United States District Court, W.D. New York.

March 12, 1997.

Steven H. Wodka, Little Silver, NJ, John N. Lipsitz, Buffalo, NY, for plaintiff.

Samuel Goldblatt, Buffalo, NY, for defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. William M. Skretny for pretrial matters, pursuant to 28 U.S.C. § 636(b)(1)(A). Plaintiff has filed a motion pursuant to Rule 37 of the Federal Rules of Civil Procedure to compel defendants Dow and PPG to produce documents responsive to plaintiffs 6th and 7th request for production. Defendants have filed a motion for a protective order pursuant to Fed.R.Civ.P. 26. For the following reasons, plaintiff's motion is granted, and defendants' motion is denied.

## BACKGROUND

Plaintiff claims in this case that her husband William Smith died on September 15, 1993 from brain cancer caused by exposure to vinyl chloride between November 26, 1973 and December 8, 1974, while he was em-

ployed at Goodyear Tire & Rubber Company's Niagara Falls plant. The present discovery dispute is a continuation of a dispute previously heard and addressed by this court, as reflected in its Third Amended Scheduling Order, dated October 21, 1996 (Item 42). That order contemplated further motions to compel with respect to plaintiffs 6th and 7th document requests, and suspension of the discovery schedule pending resolution of any such motions.

The 6th and 7th document requests pertain to plaintiffs efforts to obtain from Dow and PPG "all documents relating to ... the Chemical Manufacturers Association ["CMA"] ... concerning the possible harmful effects of exposure to vinyl chloride ..." (see, e.g., Item 43, Ex. A). Defendants objected to these requests on several grounds, including the objection "to producing on-going, but as yet incomplete scientific studies and related documents concerning vinyl chloride" (id., Ex. C, ¶ 4 (Dow's objections); Ex. D, ¶ 7 (PPG's objections)). According to the motion papers, Dow and PPG, as members of the CMA. are currently sponsoring (along with other vinyl chloride manufacturers) four ongoing research studies regarding the health effects of vinyl chloride (see Item 45, pp. 4–6).

On December 16, 1996, plaintiff filed a motion to compel Dow and PPG to produce documents within their possession, custody or control concerning three of those ongoing studies, specifically:

1. Update of an industry-wide study of the mortality rate of vinyl chloride workers, conducted by Dr. Kenneth Mundt of Applied Epidemiology, Inc. of Amherst, MA, and expected to be completed in December, 1997 (the "Mundt Study");

2. An examination of brain cancer occurrence in vinyl chloride workers, conducted by Dr. Carlo Tamburro of the University of Louisville, with an unknown expected completion date (the "Tamburro Study"); and,

3. An evaluation of the formation and repair of DNA adducts induced in rats by vinyl chloride, conducted by Raymond Schroeder of Huntingdon Life

Science in East Millstone, NJ, and Dr. James Swenberg of the University of North Carolina, with an expected completion date of December, 1997 (the "DNA Adducts Study" or "Schroeder/Swenberg Study").

Also on December 16, 1996, Dow and PPG filed a joint motion for a protective order striking plaintiff's document requests to the extent that they seek documents pertaining to these "ongoing, but as yet incomplete scientific studies concerning vinyl chloride" (Item 44). PPG also objects to plaintiff's 6th document request to the extent that it seeks records of PPG's sale of vinyl chloride to Goodyear for the period between 1975 and 1993—i.e., outside the limited period of exposure claimed in the case (November of 1973 through December of 1974), and to plaintiff's request for an index to the approximately 107,000 pages of documents PPG has made available for inspection at its document repository in Pittsburgh.

### DISCUSSION

### I. Discovery of the Research Studies.

Dow and PIG have refused to produce any documents relating to the three ongoing research studies referred to above, relying primarily on the researchers or scholar's privilege. Dow and PPG also contend that plaintiff's request for these documents is too broad, and seeks evidence neither relevant nor admissible under the standards for considering scientific evidence set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

### A. Researcher's/Scholar's Privilege.

Defendants rely on two cases from the Seventh Circuit that have recognized a qualified researcher's or scholar's privilege, principally to protect the interest of the researcher in not having the results of his or her research disclosed prematurely. *See Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560–61 (7th Cir.1984); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1274–76 (7th Cir.1982). Other courts, including the Second Circuit, have been less sympathetic to

the recognition of the privilege. *In re American Tobacco Co.*, 880 F.2d 1520 (2d Cir. 1989); *see also Burka v. United States Department of Health and Human Services*, 87 F.3d 508 (D.C.Cir.1996); *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 519 (M.D.N.C. 1989); *In re Snyder*, 115 F.R.D. 211, 213 (D.Ariz.1987); *Wilkinson v. FBI*, 111 F.R.D. 432 (C.D.Cal.1986); *Wright v. Jeep Corp.*, 547 F.Supp. 871, 876 (E.D.Mich.1982).

In the *American Tobacco Co.* case, the Second Circuit considered whether a researcher's interest in her data merited a protective order, but declined to conclusively rule on the issue. The district court there had ruled that under state law, a researcher might have a cognizable interest in preventing disclosure of research data to protect her interest in publishing those results, although the existence of such a privilege was far from clear. The only state court case which could be said to have recognized the privilege, *Matter of R.J. Reynolds Tobacco Co.*, 136 Misc.2d 282, 518 N.Y.S.2d 729 (Sup.Ct. N.Y.Co.1987)(also relied on by defendants here), focused its attention on the burden of the contested subpoena, and thus "it [was] possible that the [*Reynolds* ] court regarded the scholar's interest in his research data as merely a factor to be taken into account in weighing the burdens of production." *American Tobacco Co., supra,* 880 F.2d at 1528.

Earlier, in *In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223 (2d Cir.1984), the Second Circuit declined to decide if a qualified "scholar's privilege" should be recognized under Rule 501 of the Federal Rules of Evidence because the factual record before the court was insufficiently developed. The attorney's affidavit submitted in support of the privilege claim in that case stated only that the researcher was a doctoral candidate at SUNY, writing a dissertation entitled "The Sociology of the American Restaurant," and that, in the course of his employment as a "participant observer" at various Long Island restaurants, he had gathered information "from a variety of sources, many of whom were promised confidentiality." *Id.* at 225. According to the court, this information did not meet the threshold for establishing a scholar's privilege, if it exists. To do so, the person claiming the privilege must submit "a detailed description, of the nature and seriousness of the scholarly study in question, of the methodology employed, of the need for assurances of confidentiality to various sources to conduct the study, and of the fact that the disclosure requested ... will seriously impinge upon that confidentiality." *Id.*

█ These requirements are reflected in Fed.R.Civ.P. 26(b)(5), which provides as follows:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the application of the privilege or protection.

Under this rule, the party asserting the privilege or protection must specifically identify each document or communication, and the type of privilege or protection being asserted, in a privilege log. *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y.1996); *John Labatt Ltd. v. Molson Breweries*, 1995 WL 23603, *1 (S.D.N.Y.1995).

To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. Fed.R.Civ.P. 26(b)(5), Advisory Committee Notes, 1993 Amendments; *see von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Bennett v. Fieser*, 1994 WL 542089, *3 (D.Kan.1994). The summary should be specific enough to permit the court or opposing counsel to determine whether

the privilege asserted applies to that document. *Bennett, supra.*

■ In this case, defendants have provided the title of the studies at issue, the name of the researcher, the researcher's place of business or academic institution, and the expected date of completion of the study. However, there is no itemization of the documents claimed to be privileged, and there is no information about the nature or contents of the study, the methodology employed, the need for assurances of confidentiality to the sources employed to conduct the study, or any facts to provide a basis for assessing whether the disclosure requested by plaintiff will seriously impinge upon that confidentiality. The information provided by defendants in support of their assertion of the privilege is simply not sufficient to enable the court to determine whether the privilege, even if it exists, applies.

Furthermore, defense counsel has represented to the court that at least two of the four researchers involved in the studies at issue, Drs. Tamburro and Swenberg, will testify as experts at trial in this case (*see* Item 48, Exs. B & C). Indeed, in his expert report, Dr. Tamburro states that "previous epidemiological studies and our own ongoing research have not shown any relationship between brain cancer and vinyl chloride exposure" (*id.,* Ex. B, p. 2). Defendants contend that this reference is to Dr. Tamburro's work with the University of Louisville's Division of Occupational Toxicology, not the ongoing CMA-sponsored research. However, there is nothing in the record to suggest that Dr. Tamburro "will, or would ever be able to, completely exclude the study at issue from the background of information and clinical experience forming the basis of his opinions." *Simon v. G.D. Searle & Co.,* 119 F.R.D. 680, 682 (D.Minn.1987)(ongoing research study by defendant's expert, funded by defendant, ordered produced).

In addition, in each of the cases cited above that have considered a researcher's privilege claim, the discovery request was made in the form of a subpoena directed at the researchers themselves. In this case, plaintiff's document requests are directed at the defendants, and seek only those documents pertaining to the studies that are in the possession, custody and control of the defendants.

Finally, defendants' concerns about disclosure of confidential information, trade secrets or other intellectual property of the researchers have already been addressed in the confidentiality order entered in this case on June 6, 1995 (Item 21).

### B. Relevancy.

Dow and PPG also argue that plaintiff's request for production of "all documents" pertaining to the ongoing research studies is too broad and ambiguous to meet the "reasonable particularity" requirements of Fed. R.Civ.P. 34, and seeks information neither relevant to the case nor reasonably calculated to lead to the discovery of admissible evidence. Defendants contend that because the studies are incomplete they are neither relevant nor admissible under the Supreme Court's holding in *Daubert* and therefore production of the documents now in their possession—*i.e.,* "administrative" data—could not possibly lead to the discovery of admissible evidence.

■ With respect to the "overbroad" argument, plaintiff's document request does not seek "every single scrap of paper" related to the studies. Plaintiff seeks those documents in the possession, custody and control of defendants related to three specific ongoing scientific studies. This request is within the scope of "reasonable particularity" required by Fed.R.Civ.P. 34(b).

With respect to relevancy, defendants argue that because the studies are incomplete, and will still be incomplete at the time of trial, they cannot meet the requirements for admissibility of scientific evidence set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra,* and therefore any documents in the possession of defendants pertaining to the studies (which would reflect only the administrative and funding aspects of the studies) could not possibly contain any information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1).

*Daubert* dealt with the guidelines for establishing the reliability and relevancy of the foundation for admitting scientific expert testimony at trial under Rules 702 and 104(a) of the Federal Rules of Evidence. According to the Supreme Court, in applying Rule 702, district courts should consider several factors: (1) whether the foundational theory or technique relied on by the expert "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," and (3) the "known or potential rate of error" associated with a particular scientific technique. *Daubert, supra,* 509 U.S. at 593–94, 113 S.Ct. at 2796–97. The Court was careful not to "presume to set out a definitive checklist or test." *Id.* at 593, 113 S.Ct. at 2796. For example, the Court stated that "[p]ublication ... does not necessarily correlate with reliability," that "in some instances well-grounded but innovative theories will not have been published," and that "[s]ome propositions ... are too particular, too new, or of too limited interest to be published." *Id.* at 594, 113 S.Ct. at 2797. "The *Daubert* Court expressed confidence in the capacity of federal judges to make the appropriate validity and relevance inquiries." *Federal Deposit Insurance Corp. v. Suna Associates, Inc.,* 80 F.3d 681, 687 (2d Cir. 1996).

In this case, there is not enough information in the record to make a determination as to whether any of the scientific techniques or theories used in the CMA studies will be relied upon by any of the witnesses at trial as a foundation for their expert testimony, or, if so, whether those techniques or theories satisfy the *Daubert* factors. In this respect, defendants' argument on the admissibility of the CMA studies is premature.

Accordingly, plaintiff's motion to compel Dow and PPG to produce documents in their possession relating to the CMA studies is granted. Defendants must produce such documents within 30 days from the date of this order, and must supplement this production, as required by Rule 26(e), on or before **September 15, 1997.** Defendants' motion for a protective order is denied.

## II. PPG Sales Records.

As to PPG sales records, counsel for PPG agrees to stipulate as to PPG's sales to Goodyear's Niagara Falls plant for the years 1975–1993.

## III. Other PPG Documents.

Finally, plaintiff requests that the court direct PPG to provide an index for the approximately 107,000 pages of documents it has made available for inspection at its document repository in Pittsburgh.

After discussion of specific requests, counsel agreed to the following:

Defendant PPG will provide, within 30 days from the date of this order, (1) documents authored by PPG on the harmful effects of vinyl chloride, (2) correspondence with Dr. Maltoni, and (3) documents exchanged with Goodyear on the harmful effects of vinyl chloride.

### *CONCLUSION*

For the foregoing reasons, plaintiff's motion to compel (**Item 43**) is granted. Defendants' motion for a protective order (**Item 44**) is denied.

**SO ORDERED.**